UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SONJA STANKOSKI,**

       **Plaintiff,**

                                        **Civil Action 2:11-cv-00627**
**v.**                                   **Judge James L. Graham**
                                      **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

       **Defendant.**

**OPINION AND ORDER**

      Plaintiff, Sonja Stankoski, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits.  This matter is before the Court for consideration of the June 29, 2012 Report and Recommendation of the Magistrate Judge.  (ECF No. 13.)  The Magistrate Judge specifically recommended that the Court affirm the decision of the Commissioner.  On July 9, 2012, Plaintiff filed her Objections to the Report and Recommendation.  (ECF No. 14.)  For the following reasons, Plaintiff's Objections are **OVERRULED** and the June 29, 2012 Report and Recommendation is **ADOPTED**.  The decision of the Commissioner is **AFFIRMED**.

**I.**

      Plaintiff seeks disability based on both mental and physical impairments.[1]  Plaintiff

---

[1]  In the June 29, 2012 Report and Recommendation, the Magistrate Judge performed a thorough review of both the administrative hearing testimony and the medical evidence.  (*See* Report & Recommendation 2–14, ECF No. 13.)  Accordingly, for the purposes of this Opinion and Order, the Court finds only a brief review of the record evidence to be necessary.

testified that she began suffering from depression in November 2006 following the death of her father.  (R. at 36.)  After her father's death, Plaintiff received treatment from various mental health professionals for depression and anxiety including Drs. Marc Clemente and April Mancuso.  (*See, e.g.*, R. at 223–28, 552–69.)  In August 2007, Plaintiff received a consulting evaluation from psychologist Mark D. Hammerly, Ph.D.  (R. at 233–40.)  Dr. Hammerly opined that Plaintiff had a moderately impaired ability to relate to others; no impairment in her mental ability to understand and follow instructions; no impairment in her ability to maintain attention and concentration; and a moderately impaired ability to withstand stress.  (R. at 239–40.)  In July 2009, one of Plaintiff's doctors recommended that she consider returning to medical therapy for her depression.  (R. at 452.)

At the April 2010 administrative hearing, Plaintiff testified that her depression remained the same and that her anxiety became worse since November 2006.  (R. at 37–39.)  Plaintiff stated that she had been receiving mental health counseling every week until the previous year. (R. at 46.)  Plaintiff indicated that she had stopped going to counseling when her insurance changed because her doctor was not on her current plan.  (*Id.*)  Nevertheless, Plaintiff admitted that she did not attempt to find another mental health provider after her insurance changed, and had instead relied on her primary care physician for medication.  (R. at 46–47.)

Psychologist Daniel W. Hamill, Ph.D., testified as a medical expert concerning Plaintiff's mental impairments at the administrative hearing.[2]  Dr. Hamill opined that Plaintiff should be precluded from the stress of complex, but not detailed, work.  (R. at 31–32.)  Additionally, Dr.

---

[2]  Dr. Hamill testified prior to Plaintiff and did not have the benefit of hearing her testimony.

Hamill limited Plaintiff to occasional public contact and precluded any type of forced or assembly-line paced work.  (R. at 32.)

Plaintiff was also treated by a variety of doctors for her physical impairments.  For example, Dr. Albert Salomon, Plaintiff's primary care physician, treated her for several conditions including low back pain, chest pain, osteoarthritis, and fibromyalgia.[3]  (*See, e.g.*, R. at 230, 354, 546.)  Plaintiff received cardiac catheterizations in July 2008, March 2009, and June 2009.  (R. at 388–90, 572–74.)  Additionally, objective testing of Plaintiff's back revealed degenerative changes and stenosis.  (R. at 475.)  In November 2009, neurosurgeon William Kemp, M.D., discussed possible surgical intervention to treat Plaintiff's back condition.  (*Id.*)  Plaintiff, however, did not feel that her level of difficulty was sufficient to warrant surgical intervention.  (*Id.*)

The record also contains opinion evidence from medical sources.  In June 2007, Dr. Salomon opined that Plaintiff was "unable to concentrate well [and] panics . . . ."  (R. at 231.)  Dr. Salomon also opined, however, that it was too early to determine Plaintiff's response to treatment.  (*Id.*)  In August 2007, Dr. Herbert Grodner opined, following a consultive examination, that Plaintiff "would have difficulty with most types of physical activities."  (R. at 243.)  State agency reviewing physician Walter Holbrook, M.D., issued a functional capacity opinion in December 2007.  (R. at 301–08.)  Although Dr. Holbrook indicated that he considered Plaintiff's statements at that time to be credible, he also considered Plaintiff physically capable of lifting 25 pounds frequently and 50 pounds occasionally; standing and/or walking for 6 hours in a workday; and sitting for 6 hours in a workday.  (R. at 302, 306.)

[3]  As implied above, Dr. Salomon also treated Plaintiff for depression.

3

Melissa Neiman, M.D., testified as a medical expert regarding Plaintiff's physical condition at the administrative hearing.  She limited Plaintiff to a reduced range of light work. (R. at 48–49.)

On May 6, 2010, the ALJ issued a decision concluding that Plaintiff was not disabled. The ALJ found that, despite her impairments, Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work.  (R. at 15.)  Mentally, the ALJ found Plaintiff capable of understanding, remembering, and carrying out detailed tasks with no forced pace or assembly line work and occasional public contact.  (*Id.*)  Based on this RFC, and the vocational expert testimony, the ALJ found Plaintiff capable of performing a number of semi-skilled light jobs.

On June 29, 2012, the Magistrate Judge recommended that the Court affirm the Commissioner's decision.  Plaintiff raises various objections to the Report and Recommendation. Specifically, in addition to raising some new arguments, Plaintiff contends that both the ALJ and Magistrate Judge failed to account for her crying spells and other symptoms; failed to address the prior disability findings of Plaintiff's employer; erred in considering Plaintiff's credibility; erred in weighing the medical evidence; and erred in relying on vocational testimony to find that Plaintiff could perform a significant number of jobs in the national economy.

## II.

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  Upon review, the Court "may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Within the Social Security context, the Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice withing which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal; citation omitted). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III.

Plaintiff objects to the June 29, 2012 Report and Recommendation in a variety of ways. As explained below, the Court upon *de novo* review adopts the conclusions and reasoning of the Magistrate Judge and incorporates the Magistrate Judge's analysis as if written herein. (*See* Report & Recommendation 17–31, ECF No. 13.) The Court will now address in turn the

5

primary contentions made in Plaintiff's Objections.

**A.      New Arguments**

Within her Objections, Plaintiff attempts to bring new issues that she did not raise in her Statement of Errors or her Reply that were before the Magistrate Judge.  Specifically, Plaintiff now contends that the ALJ's findings that Plaintiff had mild to moderate limitations in concentration, persistence, or pace, and moderate impairments in her ability to handle stress, were internally inconsistent with the ALJ's ultimate assessment of Plaintiff's mental RFC. Additionally, Plaintiff contends that the administrative decision failed to account for her hand problems.

A party may not raise new matters in Objections that she did not first raise within initial briefing.  *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (recognizing that "[c]ourts have held that while the Magistrate Judge Act . . . permits *de novo* review by the district court . . . it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate"); *Carpenter v. Astrue*, No. 2:07-cv-552, 2008 WL 3200280, at *1 (S.D. Ohio Aug. 5, 2008) (holding that a claimant had waived issues on objection which he did not raise within his statement of errors); *see also Becker v. Clermont County Prosecutor*, 450 F. App'x 438, 439 (6th Cir. Oct. 25, 2011) (holding that it was not necessary for the Court to consider a request that the plaintiff had not made "until he filed objections to the magistrate judge's report and recommendation").  Relatedly, in the context of Social Security cases, it is a claimant's duty to highlight the portions of the record on which his or her argument is based.  *See Przytulski v. Astrue*, No. 1:11–cv–1518, 2012 WL 2025299, at *6 (N.D. Ohio June 5, 2012) ("The Court will not cull through the record and speculate on which portion of the record a party

relies; indeed, the Court is not obligated to wade through and search the entire record for some specific facts that might support a party's claims.").

Here, the Court finds that Plaintiff has waived the arguments detailed above.  Although Plaintiff initial briefing challenged the ALJ's mental RFC determination in a variety of ways,[4] she did not contend that the ALJ's mental RFC assessment was internally inconsistent with his findings relating to her ability to concentrate and handle stress.  Moreover, although the record certainly contains medical evidence relating to Plaintiff's hand problems, Plaintiff did not put this particular impairment at issue in her initial briefing.[5]  Rather, in summarizing the record evidence, Plaintiff did not cite or even mention evidence of her hand impairments.  Furthermore, Plaintiff did not argue that the ALJ's RFC findings failed to account for her hand impairments.

Even if the Court would decide the issues, Plaintiff's new contentions would not result in reversible error.  The ALJ's mental RFC assessment does not appear to be internally inconsistent with either his finding that Plaintiff has mild to moderate difficulties in the area of concentration or his recognition of Dr. Hammerly's finding that Plaintiff was moderately impaired in her ability to withstand work stress and pressure.  (*See* R. at 14, 17.)  Rather, the ALJ appears to have accounted for these findings by relying on Dr. Hamill's testimony and limiting Plaintiff to only detailed—as opposed to complex—tasks, with no forced pace or assembly line work, and only

---

[4]  For example, Plaintiff contended that the ALJ erred in weighing the medical evidence and assessing her credibility.

[5]  Notably, Plaintiff's Statement of Errors contended that her disabling impairments were "her depression and anxiety, her heart, her neck and back, fibromyalgia, and obesity." (Statement of Errors 2, ECF No. 8.)

occasional public contact.[6]  (R. at 15.)  With regard to Plaintiff's hand impairment, the record

contains evidence that Plaintiff received treatment for mild carpal tunnel syndrome and arthritis

in her hands from February 2007 through at least April 2008.  (*See* R. at 326–44.)  Nevertheless,

there is little, if any, indication from the record that these conditions limited Plaintiff beyond the

physical RFC that the ALJ assigned.  The ALJ's RFC assessment was based on the testimony of

Dr. Neiman, who reviewed the entire medical record.  Furthermore, although the ALJ did not

find Plaintiff's hand conditions to be severe impairments, he did consider Plaintiff's complaints

of arthritis in her hands when evaluating her RFC.  (R. at 16.)

**B.     Crying Spells and Other Symptoms**

Plaintiff also maintains that the ALJ failed to account for the effect of all of her

symptoms, most particularly her crying spells and fatigue.  The Court finds such contentions

unavailing.  As the Magistrate Judge acknowledged, the record contains various references to

Plaintiff's symptoms, including crying spells and fatigue.  In reviewing Plaintiff's testimony, the

ALJ summarized her reported symptoms including crying, fatigue, and problems remembering.

Nevertheless, the ALJ ultimately relied on the testimony of Drs. Hamill and Neiman in

concluding that Plaintiff could perform a reduced range of light work.  Because the medical

experts gave their opinions based on a review of the medical record evidence, it was justifiable

for the ALJ to infer that these experts took Plaintiff's various symptoms, which were part of the

treatment record, into account.  Furthermore, with regard to Plaintiff's subjective allegations, as

discussed further below, the ALJ acted within his discretion in finding that Plaintiff was not

---

[6]  The Court further notes that Dr. Hamill opined that Plaintiff had moderate difficulties
in concentration, persistence, or pace, but still found Plaintiff capable of the mental RFC the ALJ
assigned.  (*See* R. at 322.)

entirely credible.

Plaintiff's objections in this regard appear to be based on an unrealistic expectation of medical experts.  Pursuant to the Regulations, ALJs may rely on medical experts to opine on the nature and severity of a claimant's impairments.  *See* 20 C.F.R. §§ 404.1527(e)(2)(iii), 404.927(e)(2)(iii).  Although the level of detail of an opinion may ultimately be relevant to supportability, a medical expert need not explicitly address every one of a claimant's symptoms in order for his or her functional-capacity opinion to carry weight.  *See* 20 C.F.R. §§ 404.1527(c)(3), 404.927(c)(3).  Here, based on review of the record evidence, Drs. Hamill and Neiman summarized Plaintiff's overall conditions and gave opinions as to the amount of work they believed Plaintiff could still perform**.**  The fact that these medical experts did not explicitly discuss every one of Plaintiff's alleged symptoms does not mean their ultimate opinions failed to account for Plaintiff's impairments.

**C.**     **Prior Disability Determinations**

Within both her Statement of Errors and Objections, Plaintiff briefly contends that the ALJ erred in failing to consider her previous employer's disability findings.  The Court finds that any error in this regard was harmless.

Social Security Ruling 06-03p addresses disability determinations by nongovernmental agencies.  *See generally* SSR 06-03p, 2006 WL 2329939 (August 9, 2006).  The Ruling stresses that the determinations that a claimant is disabled rendered by entities other than the Social Security Administration are not binding on the Commissioner.  *Id.* at *6.  Nevertheless, the Ruling provides that "the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases."  *Id.* at *7.

9

Before remanding a case due to a procedural error, however, the Court must consider whether such an error was harmless.  *See Rabber*s, 583 F.3d at 654 ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations and citations omitted); *cf. also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) ("[W]here remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game.") (internal quotations and citations omitted).

Here, at the administrative hearing, Plaintiff testified in passing that she had received short term and long term disability from her past employer until May 2009.  (R. at 34–35.)  The Court has not found, and Plaintiff has not highlighted, any further information regarding Plaintiff's receipt of disability benefits from her employer within the record.  In the administrative decision, the ALJ acknowledged that Plaintiff received private disability benefits until May 2009.  (R. at 12.)  The ALJ did not explicitly indicate, however, the amount of weight given to the past employer's prior disability determinations.

The Court finds that any error in failing to address Plaintiff's prior disability determinations was harmless.  The ALJ acknowledged that Plaintiff had received private benefits, but, relying on the medical experts, ultimately determined that Plaintiff was not disabled within the meaning of the Social Security Act.  Given the general lack of information within the record regarding the past employer's disability determinations, and considering that the record did not contain the past employer's actual disability determinations, this Court finds no reason to suspect that remand for further articulation would have any impact on the ALJ's decision.

Accordingly, the Court finds that any omission by the ALJ did not substantially prejudice Plaintiff and remand for further articulation would be a useless formality. *Cf. Borer ex rel. Borer v. Astrue*, No. 10–CV–962S, 2012 WL 912974, at *4 (W.D.N.Y. Mar. 16, 2012) (holding that remanding a case for consideration of a prior disability determination would serve no function when remand "would only result in the ALJ more explicitly stating why the State Commission's determination does not outweigh" the medical opinion evidence).

**D.  Credibility**

A number of Plaintiff's objections center around the ALJ's credibility determination. Plaintiff contends that the ALJ failed to offer sufficient articulation and adequately consider the relevant factors. Additionally, Plaintiff contends that the reasons the ALJ provided for finding her not credible were insufficient. Finally, Plaintiff asserts that the ALJ did not properly account for Plaintiff's fibromyalgia.

As the United States Court of Appeals for the Sixth Circuit has recognized, "[c]redibility determinations with respect to subjective complaints of pain rest with the ALJ" and an ALJ's credibility findings are generally entitled to deference. *Torres v. Comm'r of Soc. Sec.*, No. 11–3981, 2012 WL 3089334, at *6 (6th Cir. July 31, 2012) (internal quotations and citations omitted). In evaluating credibility, an ALJ considers both the objective medical evidence as well as other evidence including a claimant's daily activities, symptoms, treatment, and medication history. 20 C.F.R. §§ 404.1529(c), 416.929(c). That an ALJ must consider such factors does not mean an ALJ must always explicitly address each factor within his or her decision. *See Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) ("*But Social Security Ruling* 96–7p requires such factors to be *considered*, not *discussed*, and Plaintiff has not

cited any authority providing that an ALJ must exhaustively discuss every factor of his analysis.") (emphasis in original).  Nevertheless, in evaluating a claimant's credibility, an ALJ's reasoning must be with "sufficient specificity as to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011) (internal quotations and citations omitted).

Here, the Court agrees with the Magistrate Judge that the ALJ's credibility determination was sufficiently specific.  Plaintiff takes issue with the ALJ's use of "boilerplate language" in considering her credibility, citing to *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012).  In *Bjornson*, the United States Court of Appeals for the Seventh Circuit emphasized that the use of credibility boilerplate, in and of itself, did not indicate the "specific evidence the ALJ considered in determining that claimant's complaints were not credible."  *Id.* at 645.  The Court recognizes the dangers of the use of boilerplate language, but is still not convinced that the ALJ erred as a matter of law.  In this case, reading the boilerplate language within the context of the entire opinion it is clear that the ALJ was attempting to give Plaintiff the maximum benefit of the doubt with regard to her credibility, while still finding her not entirely credible given that her testimony conflicted with the RFC assessments of the medical experts.

As the Magistrate Judge concluded, in addition to the boilerplate language, the ALJ provided specific reasons within his analysis to support his finding that Plaintiff was not entirely credible:

> The ALJ [] engaged in a review of the medical evidence, portions of which suggested why the ALJ found Plaintiff less than entirely credible.  For example, in reviewing the evidence, the ALJ stressed that Plaintiff had suggested to Dr. Kemp that she did

12

not consider her pain severe enough to justify surgery. (R. at 18.) Finally, toward the end of his RFC analysis, the ALJ stated that although the medical evidence indicated Plaintiff would experience some pain and discomfort, the evidence did not suggest that such symptoms would rise to the work preclusive level. (R. at 18.) Additionally, the ALJ explicitly concluded that Plaintiff's testimony regarding her reason for stopping mental health counseling did not hold up to scrutiny.

(Report & Recommendation 26, ECF No. 13.) Moreover, the ALJ's analysis indicated that he considered other evidence as required pursuant to 20 C.F.R. §§ 404.1529(c) and 416.929(c). For example, the ALJ's RFC section included a review of both Plaintiff's daily activities and general treatment history. (*See* R. at 16–18.)

Furthermore, the Court finds that substantial evidence supports the ALJ's credibility determination. As the Magistrate Judge noted, given the testimony of the medical experts in this case, it does not appear that the objective evidence confirms Plaintiff's subjective complaints. The ALJ also had others reasons for discounting Plaintiff's credibility. For example, the ALJ stressed that Plaintiff had failed to seek mental health counseling after her insurance changed.[7] The Court recognizes that under certain circumstances it is likely improper to question the credibility of a claimant with mental impairments based on his or her failure to seek treatment. *See Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (noting, in the context of a claimant suffering from schizoid personality, that "it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"). In this case, however, the circumstances provide reason to think that Plaintiff's failure to renew counseling

---

[7] Plaintiff contends that the ALJ should not have relied on the fact that Plaintiff stopped treatment, because her mental conditions meet the duration requirement of 20 C.F.R. § 404.1509. The ALJ, however, did not use this information to conclude that Plaintiff had failed to meet the one-year duration requirement. Rather, Plaintiff's failure to seek additional mental-health treatment served as one of the reasons the ALJ found Plaintiff not entirely credible. The Court finds no error in this regard.

13

was not due to the effects of her mental impairment.  The record reflects Plaintiff was more than capable of maintaining counseling from 2007 until 2009.  It appears Plaintiff stopped counseling because her mental health provider was not on her new insurance plan.   Plaintiff admitted at the administrative hearing that she had not tried to find a new mental health provider compatible with her current insurance, and instead decided to receive medication from her primary care physician.  (R. at 46–47.)  It appears Plaintiff took this course of action despite the recommendations of at least one of her doctors that she continue therapy.  (*See* R. at 452.)  Under these circumstances, it was reasonable for the ALJ to infer that Plaintiff's failure to continue counseling indicated that her mental impairments and symptoms were not as severe as she alleged at the administrative hearing.

Additionally, Plaintiff's statement to Dr. Kemp regarding her back pain provide grounds for discounting her credibility.  In contrast to Plaintiff's hearing testimony, in which she indicated that she suffered constant severe back pain, she told Dr. Kemp in November 2009 that she did not believe her back difficulties were severe enough to justify considering surgical intervention.  This apparent inconsistency provided grounds for the ALJ to question Plaintiff's reports of pain.  Furthermore, because Plaintiff testified that her back pain and fibromyalgia pain were hard to distinguish (R. at 44), this statement also provided at least some grounds for questioning the extent of Plaintiff's fibromyalgia pain.

Moreover, the Court is also not convinced, despite Plaintiff's contentions, that Dr. Holbrook's opinion provides support to her credibility.  While Dr. Holbrook, a state agency physician, did opine that Plaintiff was credible, the Court must read this statement in context.  In particular Dr. Holbrook opined that Plaintiff could perform a slightly restricted range of medium

work, an RFC less restrictive than the ALJ's determination.  (*See* R. at 302–05.)  Plaintiff's

hearing testimony clearly conflicts with Dr. Holbrook's RFC determination.  Accordingly, Dr.

Holbrook's credibility opinion appears to have limited value.

Finally, the Court agrees with the Magistrate Judge that the ALJ's opinion adequately

accounted for Plaintiff's fibromyalgia.  As the Magistrate Judge provided:

> Relatedly, the ALJ did not fail to account for Plaintiff's fibromyalgia.  The medical
> records contain diagnoses of fibromyalgia as well as some tender-point findings upon
> examination.  None of Plaintiff's examining physicians, however, issued opinions as
> to the severity of Plaintiff's fibromyalgia.  Nor did they opine upon how the
> condition was affecting Plaintiff's ability to work.  The ALJ recognized fibromyalgia
> as a severe impairment and reviewed Plaintiff's testimony regarding fibromyalgia.
> Relying on the opinion of Dr. Neiman, who considered Plaintiff's fibromyalgia, the
> ALJ restricted Plaintiff to a reduced range of light work.

> Additionally, the undersigned finds that, even considering fibromyalgia, the ALJ's
> credibility determination was justified.  Plaintiff is certainly correct that a lack of
> objective medical evidence would not be unusual in a case involving fibromyalgia.
> As detailed above, however, the ALJ had other reasons for finding Plaintiff not
> entirely credible.  In particular, Plaintiff's testimony regarding her mental health
> treatment gave the ALJ at least some reason to believe that she might be exaggerating
> her overall symptoms.  Perhaps more importantly, Plaintiff testified at the
> administrative hearing that her fibromyalgia pain was connected to her back pain and
> that it was hard to distinguish one from the other. (R. at 44.)  Once again, substantial
> evidence supports the ALJ's decision that, despite her fibromyalgia, Plaintiff was not
> entirely credible and could perform a reduced degree of light work.

(Report & Recommendation 27–28, ECF No. 13.)

## E.    Medical Opinion Evidence

Plaintiff next maintains that the ALJ improperly weighed the medical evidence**.**  Plaintiff

stresses that the ALJ erred in rejecting the opinions of Dr. Salomon as to her concentration and

tendency to panic.  Plaintiff also maintains that the ALJ failed to consider Dr. Grodner's opinion

that she would have difficulty with most physical activity.

15

Once again, the Court concurs with the findings of the Magistrate Judge that the ALJ did not err in weighing the medical opinion evidence in this case.  In particular, the Court finds that the ALJ was justified in, and gave sufficient reasons for, giving the opinions of the medical experts weight over Dr. Salomon's opinion regarding Plaintiff's inability to concentrate and tendency to panic.  The medical experts offered more detailed opinions regarding Plaintiff's functional ability based on a review of the entire record.  Additionally, Dr. Salomon recognized that he was giving his opinion at an early stage in Plaintiff's treatment; this opinion, therefore, did not set specific parameters regarding Plaintiff's ability to work.

The Court also finds no reversible error with regard to Dr. Grodner's opinion.  Following a consultive examination, Dr. Grodner opined that Plaintiff would have difficulty with most types of physical activity.  (R. at 243.)  The ALJ indicated that he had considered the opinion evidence, but did not explicitly weigh Dr. Grodner's opinion.  As the Magistrate Judge stated, Dr. Grodner was not a treating physician, and, therefore, was not subject to the procedural protections of the good-reason rule.  Furthermore, the Sixth Circuit has held:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
>> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) (quoting *Loral Def. Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999).  Here, although the ALJ did not explicitly weigh Dr. Grodner's opinion, he did provide that he had considered the opinion

evidence.  Furthermore, Dr. Grodner's opinion is vague as to Plaintiff's actual limitations.  It is clear from the ALJ's decision that he chose to rely on the more specific physical RFC opinion of the medical expert.  Under these circumstances, the Court finds that substantial evidence supports the ALJ's weighing of the evidence.

## F.     Vocational Findings

Finally, Plaintiff contends that the ALJ erred in relying on vocational expert testimony that she could perform various jobs at the semi-skilled light level.  Specifically, Plaintiff contends that because the ALJ did not find that she had transferable skills, she should have been limited to light work.  Once again, the Court disagrees with Plaintiff's contentions.

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff could perform various semi-skilled light jobs.  The ALJ did not find that Plaintiff had no transferrable skills, as Plaintiff suggests.  Rather, the ALJ explicitly noted that the vocational expert had testified that Plaintiff's skills would transfer in multiple ways.  (*See* R. at 19, 54.)  The ALJ determined, however, that whether or not Plaintiff had transferrable job skills, the Medical Vocational Guidelines still suggested a finding of not disabled.  The ALJ further relied on vocational expert testimony to determine whether jobs existed that Plaintiff could perform.  The vocational expert's testimony was that a person with the RFC the ALJ assigned could perform various semi-skilled light jobs.  In light of this testimony, the ALJ was reasonable in concluding that Plaintiff could perform a significant number of jobs in the national economy.

## IV.

In summary, the ALJ provided sufficient articulation to allow for meaningful review and substantial evidence supports his conclusions.  *Cf. Kornecky.*, 167 F. App'x at 507 ("'No

principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.'") (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).

Based on the above reasoning, as well as the analysis within the June 29, 2012 Report and Recommendation, Plaintiff's Objections (ECF No. 14) are **OVERRULED** and the June 29, 2012 Report and Recommendation (ECF No. 13) is **ADOPTED**.  The decision of the Commissioner is **AFFIRMED**.

IT IS SO ORDERED.

s/ James L. Graham
James L. Graham
UNITED STATES DISTRICT COURT

Date: August 31, 2012

18